UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff/Respondent,<br>v.<br>TIMATHE RICHARD SOTO,<br>Defendant/Movant. | Case No. 13-cr-253-PJH<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Before the court is the represented motion of defendant Timathe Richard Soto for reduction of sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The government filed an opposition to the motion for compassionate release, and counsel for Soto filed a reply. The Probation Office also provided a response to the compassionate release motion. Having considered the relevant authorities and having reviewed the record and the parties' papers, the court DENIES the motion for compassionate release for the reasons set forth below.

**I.    BACKGROUND**

On April 18, 2013, a grand jury returned an indictment charging Soto with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Soto entered a guilty plea on May 7, 2014, pursuant to a written plea agreement. In the plea agreement, the

1

parties agreed to a sentence of 180 months, the mandatory minimum sentence for Soto's offenses. The probation officer then determined that Soto's prior convictions made him a career offender, making his Guidelines sentencing range between 292 and 365 months, plus a 60-month term consecutive to all other counts. At sentencing, the government abided by the terms of the plea agreement and recommended a below-Guidelines sentence of 180 months. On July 29, 2014, the court sentenced Soto to a term of 180 months of imprisonment, followed by five years of supervised release, with a condition of release being participation in a drug testing and treatment program.

Soto is 57 years old, has served approximately 93 months of his sentence, and is presently in the custody of the Bureau of Prisons ("BOP") at FCI Mendota. Soto has approximately 60 months remaining on his prison term, based on a projected release date of December 11, 2025. He now seeks a reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A) due to concerns about the risk of serious illness or death from exposure to the novel coronavirus disease ("COVID-19") while in BOP custody.

**II.   DISCUSSION**

**A.   Compassionate Release**

**1.   Legal Standard**

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. United States v. Penna, 319 F.3d 509, 511 (9th Cir. 2003). The court may modify a previously imposed sentence upon motion of the BOP or motion of the defendant under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act which added a provision to allow defendants, not only the Director of the BOP, to file a motion for reduction of sentence after exhausting administrative remedies or waiting 30 days after the warden's receipt of a request. See United States v. Rodriguez, 424 F.Supp.3d 674, 680 (N.D. Cal. 2019). Section 3582(c)(1)(A)(i) now provides that the court may reduce an imposed term of

imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering the applicable factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

### 2. Requirements for Relief

As applicable to Soto's motion, compassionate release is warranted if the court finds that extraordinary and compelling reasons warrant such a reduction, after considering the applicable § 3553(a) factors, and that such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i).

As mentioned above, before the First Step Act, only the BOP director could file a motion for compassionate release. Those motions were governed by the applicable policy statement at United States Sentencing Guideline § 1B1.13. Indeed, the opening language of § 1B1.13 is: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)." (emphasis added). The policy statement then set forth the test for courts to apply when ruling on those motions, including a determination that extraordinary and compelling reasons warranted the reduction, and that the defendant is not a danger to public safety.

The policy statement included commentary with application notes, which set forth specific circumstances that would qualify as "extraordinary and compelling" based on the defendant's (1) medical condition, (2) age, or (3) family circumstances. U.S.S.G. § 1B1.13, cmt. n.1. The application notes then include a "catch-all" provision, giving the BOP director sole discretion to find an "extraordinary and compelling" reason separate from the three enumerated circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D).

When the First Step Act amended section 3582, it was unclear whether § 1B1.13 remained an "applicable" policy statement. At first, many courts, including this one, found that § 1B1.13 was applicable even to defendant-filed motions. See, e.g., United States v. Eberhart, 448 F.Supp.3d 1086 (N.D. Cal. 2020). However, now that an increasing number of compassionate release motions are being filed in light of the COVID-19 pandemic, the continuing applicability of § 1B1.13 has become an evolving area of jurisprudence. An increasing number of courts have now found that § 1B1.13 does not apply to defendant-filed motions as provided for in the First Step Act, because "the Sentencing Commission never harmonized its policy statements with the FSA," and as a result, "the outdated policy statements still assume compassionate release may be granted only upon motion by the [BOP] Director." See, e.g., Rodriguez, 424 F.Supp.3d at 681.

Even more recently, four circuit courts have begun to reach the same conclusion. In September 2020, the Second Circuit held that "Guideline § 1B1.13 is not 'applicable' to compassionate release motions filed by defendants," and just within the past few weeks, the Fourth, Sixth, and Seventh Circuits issued opinions adopting the same position. United States v. Brooker, 976 F.3d 228 (2nd Cir. 2020); see also United States v. McCoy, -- F.3d --, 2020 WL 7050097 (4th Cir. Dec. 2, 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); United States v. Jones, -- F.3d --, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) (holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); United States v. Gunn, -- F.3d --, 2020 WL 6813995 (7th Cir. Nov. 20, 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.").

The court notes that the Ninth Circuit has not issued a similar ruling that § 1B1.13 is inapplicable to compassionate release motions filed by defendants. In the absence of controlling authority from the Ninth Circuit, this court will not assume that § 1B1.13 is entirely "inapplicable," though it is beginning to be persuaded by the recent circuit court

4

decisions that § 1B1.13 may not be entirely binding on defendant-filed motions. In particular, courts cannot be bound by the "catch-all" provision as currently defined in application note 1(D), because it is limited to reasons "determined by the [BOP] Director." As the McCoy court pointed out, "a defendant may now file a compassionate-release motion in court before the BOP even has considered whether he qualifies for relief under the catch-all provision," and if the BOP were to remain the sole arbiter of application note 1(D), then "defendants would be required to either forgo the 30-day lapse provision and wait for a BOP determination, or to forgo reliance on the catch-all provision in exchange for a timely decision by the district court." 2020 WL 7050097 at *8; see also id. ("It would be a strange remedy indeed if Congress provided that prisoners whose wardens failed to respond . . . could only take advantage of the thirty-day lapse provision by accepting a pared-down standard of review that omitted the flexible catchall standard.") (internal citation omitted).

In light of the evolving circuit court jurisprudence, the court considers § 1B1.13 to be "helpful guidance," even if not binding. See United States v. Burrill, 445 F.Supp.3d 22, 24 n.2 (N.D. Cal. 2020) ("even courts which have found the provision to be outdated have held it continues to provide 'helpful guidance.'") (internal citation omitted). The court also notes that much of its analysis under section 3582(c) does not hinge on whether § 1B1.13 is specifically binding. For instance, section 3582(c)(1)(A)(i) still requires the court to determine whether "extraordinary and compelling circumstances" warrant a sentence reduction, whether or not the identical language of § 1B1.13(1)(A) still binds the court. Similarly, section 3582(c)(1)(A) requires the court to consider the section 3553(a) sentencing factors, including the "nature and circumstances of the offense," the "history and characteristics of the defendant," and whether the sentence is adequate to "protect the public from further crimes of the defendant," which are also the factors the court would consider under the requirements of § 1B1.13(2).

        **a.**    **Extraordinary and Compelling Reasons**

Although section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary

1   and compelling circumstances," the application notes to the § 1B1.13 policy statement
2   identify three sets of such circumstances.  Most relevant to the present case is the
3   "medical condition of the defendant."  Specifically, the notes identify physical or medical
4   conditions that meet the "extraordinary and compelling" requirement as those where the
5   defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or
6   medical condition, serious functional or cognitive impairment, or deteriorating physical or
7   mental health because of the aging process, "that substantially diminishes the ability of
8   the defendant to provide self-care within the environment of a correctional facility and
9   from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(A).

10         To establish extraordinary and compelling reasons in support of his
11   compassionate release motion, Soto asserts that he is at risk of becoming severely ill if
12   he were exposed to COVID-19 in prison due to his health conditions and medical history,
13   primarily lung scarring.  Soto further asserts that his lung issue, in combination with his
14   age, gender, and ethnicity, put him at increased risk of severe illness from COVID-19.
15   Dkt. 88 at 10.

16         Soto admits that he does not have medical documentation of his lung scarring.
17   Dkt. 88 at 10.  Instead, Soto points to his high hematocrit (red blood cell) levels, which he
18   states are "consistent with scarring of the lungs."  Id.

19         The court notes that Soto did not report any lung scarring to his probation officer at
20   the time of the presentence investigation report.  Dkt. 64 at 15 ("Soto reported that other
21   than a tonsillectomy when he was five years old, he has never suffered from any health
22   issues.").  The government asserts, and Soto does not dispute, that Soto's medical
23   records from the past year contain no evidence of low oxygen levels, respiratory distress,
24   or any other symptoms or complications associated with lung scarring.  Dkt. 91 at 13.

25         On the present record, the court cannot find that Soto has demonstrated that his
26   medical condition constitutes "extraordinary and compelling" circumstances warranting a
27   reduction of sentence.  Soto concedes that he has not presented evidence of lung
28   scarring, and while a high red blood cell count may be correlated with lung scarring, it is

not, standing alone, identified by the CDC as a risk factor for COVID-19 complications. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 1, 2020).

Defendant further asserts that his age, gender, and ethnicity put him at an increased risk of developing severe or life-threatening symptoms from COVID-19. However, Soto fails to show that these conditions or characteristics substantially diminish his ability to provide self-care so as to warrant compassionate release. Additionally, the correlation between racial and ethnic minority groups and the increased likelihood of contracting COVID-19 or experiencing severe illness is acknowledged to be the result of long-standing systemic health and social inequities, not due to a causal relationship between susceptibility to the disease and race or ethnicity. See https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (updated July 24, 2020).

Moreover, under the present conditions at FCI Mendota, Soto does not face the critical situation that was present in United States v. Connell, where the court found that the prison in which the defendant was incarcerated, FCI Lompoc, was a COVID-19 "hotspot" with 599 inmates and staff and one inmate death at that time. Connell, – F. Supp. 3d –, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). In Connell, the court found that the dire situation at Lompoc, combined with the defendant's susceptibility due to his age of 69 and his underlying health conditions, including hypertension, high cholesterol, and pre-diabetes, rendered the defendant particularly vulnerable to serious or fatal complications from COVID-19 so as to constitute "extraordinary and compelling reasons" for immediate release, as conceded by the government in that case. Id. at *5–6, n.3. In contrast to Lompoc, FCI Mendota has only eight reported COVID-19 cases among inmates and four cases among staff as of December 18, 2020. See https://www.bop.gov/coronavirus/. The government further represents that 14 inmates and nine staff at FCI Mendota have recovered from COVID-19, as of December 1, 2020. Dkt. 91 at 17.

Overall, on this record, defendant has not established that extraordinary and compelling reasons warrant a reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

### b. Section 3553(a) Factors

Having considered the applicable § 3553(a) factors, the court further finds that a reduction of defendant's sentence would not serve the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, or to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C).

Looking to the nature and circumstances of the offense and the history and characteristics of the defendant, Soto was arrested with 330 grams of methamphetamine and a loaded 9mm pistol with an obliterated serial number, which he admitted he carried to protect the drugs and drug proceeds. Plea Agreement, ¶¶ 2, 12. At the time of sentencing, Soto was found to be a career offender with a criminal offense score of 35 and a criminal history category of VI. Dkt. 64 at 6-7. Soto's Guideline sentence was 292 to 365 months, plus an additional 60-month term consecutive to all counts. Dkt. 64 at 22. However, the government recommended a total sentence of 180 months pursuant to the parties' plea agreement, and the court sentenced Soto to 180 months imprisonment.

Given that Soto's lowest possible Guideline sentence would have been 352 months, the court finds that a reduction of the sentence to 93 months would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct. Moreover, especially in light of defendant's career offender status, a reduction would create an unwarranted disparity among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

Regarding the need for the sentence to protect the public from further crimes of the defendant, the court notes the circumstances under which he was arrested in March 2013. Approximately six months earlier, in September 2012, defendant was placed on GPS supervision while on probation in Orange County, California. Dkt. 64 at 10. Around

8

one hour later, he cut off his GPS device and absconded. Id. He was arrested on a warrant in early October, and after being released, he failed to report to his probation officer as instructed. Id. Defendant eventually reported to probation on November 14, 2012, but then absconded again and had no further contact with probation up until the time he was arrested for the instant offenses. Id. Overall, while Soto has demonstrated good conduct while incarcerated, his pattern of behavior prior to incarceration indicates that a sentence reduction would not protect the public.[1]

The court also considers "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Soto fails to show that his medical needs have not been adequately met while incarcerated, and his high red blood cell count does not heighten concerns that the prison could not effectively provide medical care. The medical care factor does not weigh in favor of compassionate release at this time. On balance, the court finds that the relevant § 3553(a) factors do not support Soto's request for a reduction in sentence.

## III.  CONCLUSION

For the reasons set forth above, the motion for reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A) is DENIED.

**IT IS SO ORDERED.**

Dated: December 18, 2020

                                                                                 /s/ *Phyllis J. Hamilton*
                                                           PHYLLIS J. HAMILTON
                                                           United States District Judge

---

[1] The foregoing reasons would also apply to any analysis of whether defendant is a danger to the safety of any other person or the community under U.S.S.G. § 1B1.13(2) and 18 U.S.C. § 3142(g). In other words, whether or not U.S.S.G. § 1B1.13 remains applicable, the court would reach the same conclusion that public safety concerns warrant denial of defendant's motion.

9